

U.S. Department of Justice

*United States Attorney*
*District of New Jersey*

_____

*Katherine Romano*  970 Broad Street, 7th floor  973-353-6095
*Assistant U.S. Attorney*  Newark, New Jersey 07102

March 3, 2023

**Via ECF**

Hon. Susan D. Wigenton, U.S.D.J.
U.S. District Court for the District of New Jersey
MLK Bldg. and U.S. Courthouse
50 Walnut Street
Newark, NJ 07102

    Re: *United States v. Richard Bishara*, Crim. No. 19-496

Dear Judge Wigenton:

  Defendant Richard Bishara ("Bishara"), appearing *pro se*, moves for a reduction in sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). (ECF No. 50.) Because Bishara has failed to establish extraordinary or compelling grounds to justify his release or a reduction in sentence, and because the § 3553(a) factors weigh against early release, the motion should be denied.

  **I. Background**

  **A. Bishara's Conviction and Sentence**

  On or about December 5, 2018, Bishara was charged by criminal complaint with conspiracy to commit wire fraud, contrary to 18 U.S.C. § 1343, in violation of 18 U.S.C. § 1349. (ECF No. 1.) The complaint alleged that Bishara, who owned moving companies, was engaged in a scheme to defraud customers by inflating the prices that the moving companies charged customers. (*See id*.) Bishara and his co-conspirators intentionally provided "low-ball" estimates to customers, and then increased the prices, in violation of federal regulations applicable to moving companies, often after having loaded the customer's household items. (*See id*.) Bishara and his co-conspirators would hold the customers' possessions hostage, demanding payment of inflated and false fees and costs before they would agree to release the possessions. (*See id*.) The loss associated with the conspiracy was nearly $2 million, and Probation identified approximately 74 victims. (*See* ECF No. 25 (Plea Agreement); PSR ¶ 51.)

Bishara originally pleaded guilty to a one-count Information charging conspiracy to commit wire fraud, contrary to 18 U.S.C. § 1343, in violation of 18 U.S.C. § 1349, on or about July 16, 2019. (ECF Nos. 16, 18.) The Court, however, rejected the parties' Rule 11(c)(1)(C) plea agreement, which included an agreed-upon sentencing range of 14 to 27 months' imprisonment and 3 years' supervised release. (PSR ¶ 13.) Bishara again pleaded guilty to the Information on or about November 14, 2019, pursuant to a plea agreement setting forth various non-binding Guidelines stipulations. (ECF Nos. 23, 25.) This plea was accepted by the Court.

On or about January 9, 2020, Bishara was sentenced by the Court to 60 months' imprisonment and 3 years' supervised release. (ECF No. 27, 28.) After sentencing but before he was due to begin serving his sentence, Bishara fled to Israel, and a warrant for his arrest was issued on or about January 29, 2020. (*See* ECF No. 34.) Bishara returned from Israel in or around August 2021 only after the Court ordered his bond forfeited. (*See* ECF Nos. 37, 39, 40.)

Bishara is serving his sentence at FCI Danbury in Danbury, Connecticut, a low-security institution with an adjacent minimum security satellite camp. Bishara is currently 46 years old. According to the BOP Inmate Locator, his projected release date is on or about August 17, 2025.

### B. Bishara's Request for Compassionate Release

On or about September 15, 2022, Bishara submitted a request to the Warden at FCI Danbury seeking compassionate release based on the prison's failure to protect him from exposure to COVID-19, his COVID-19 risk factors including insulin dependent diabetes and asthma, his ability to secure employment following release and family support, and the non-violent nature of his underlying offense. *See* Request to Warden, dated Sept. 15, 2022, attached as Exhibit A. The BOP denied Bishara's request on or about October 3, 2022, stating that Bishara did not present extraordinary or compelling reasons for release, given that his medical needs – specifically, treatment for type 2 diabetes, hyperlipidemia, and asthma – were being monitored at FCI Danbury, he tested negative for COVID-19 on March 29, 2022, and he was vaccinated and boosted against COVID-19. *See* BOP Response, dated Oct. 3, 2022, attached as Exhibit B. The BOP determined that Bishara's concern regarding the potential exposure to or contracting of COVID-19 did not warrant a reduction in sentence. *Id*.

Bishara thereafter filed the present motion seeking a reduction in sentence to time served or, in the alternative, to "12 months left to serve" to enable to him to participate in re-entry programming and halfway-house re-entry services. (*See* ECF No. 50.) Bishara argued in his motion that the conditions at FCI Danbury reflect deliberate indifference to the risks of COVID-19, pointing to the lack of regular institution-wide testing and the living conditions including lack of separation

between inmates. Bishara attached to his motion a June 2020 expert report regarding conditions and COVID-19 at FCI Danbury.

Bishara also argued in his motion that his medical conditions, specifically Type II diabetes and asthma, are COVID-19 risk factors, and that his vaccinations are unlikely to provide protection against infection. Finally, Bishara argued that the modified operations of FCI Danbury pursuant to COVID-19 constitute "extremely severe and oppressive" conditions, and pointed to his rehabilitative efforts including lack of any disciplinary issues while incarcerated and his participation in rehabilitative programming.

The Government obtained Bishara's BOP medical records, which are filed under seal as Exhibit C. The records indicate that Bishara is being treated for diabetes and asthma. These conditions appear well-controlled with medication provided by the institution. (Ex. C.) According to the BOP, Bishara received two doses of the COVID-19 vaccine while in the community, and he received a Pfizer booster at FCI Danbury on or about January 27, 2022. He tested negative for COVID-19 on or about March 28, 2022.

As of February 28, 2023, FCI-Danbury is reporting zero cases of COVID-19 among inmates, and zero cases of COVID-19 among staff. *See* https://www.bop.gov/coronavirus/covid19_statistics.html (last visited Feb. 28, 2023).

## II. Legal Framework

Under 18 U.S.C. § 3582(c)(1)(A), this Court may, in certain circumstances, grant a defendant's motion to reduce his term of imprisonment. *See United States v. Pawlowski*, 967 F.3d 327, 329 (3d Cir. 2020). A court may reduce the defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C. § 3553(a)]" if the Court finds, as relevant here, that (i) "extraordinary and compelling reasons warrant such a reduction" and (ii) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). As the movant, the defendant bears the burden to establish that he is eligible for a sentence reduction. *Ward v. United States*, 11 F.4th 354, 361 (5th Cir. 2021); *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016); *United States v. Green*, 764 F.3d 1352, 1356 (11th Cir. 2014); *United States v. Gwaltney*, No. 3:17-cr-00381 (PGS), 2020 WL 5983161, *2 (D.N.J. Oct. 8, 2020), appeal dismissed, No. 20-3176, 2021 WL1691886 (3d Cir. Feb. 24, 2021).

The Sentencing Commission has issued a policy statement addressing reduction of sentences under § 3582(c)(1)(A). As relevant here, the policy statement provides that a court may reduce the term of imprisonment after considering the § 3553(a) factors if the Court finds that (i) "extraordinary and compelling reasons warrant the reduction;" (ii) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g);" and (iii) "the

reduction is consistent with this policy statement." U.S.S.G. § 1B1.13. While the policy statement is not binding on courts considering prisoner-initiated motions, the Third Circuit has confirmed that the policy statement "still sheds light on the meaning of extraordinary and compelling reasons" and that the policy statement "can guide discretion without being conclusive." *United States v. Andrews*, 12 F.4th 255, 260 (3d Cir. 2021) (quoting, in part, *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020)).

The policy statement includes an application note that specifies the types of medical conditions that qualify as "extraordinary and compelling reasons." First, that standard is met if the defendant is "suffering from a terminal illness," such as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, [or] advanced dementia." U.S.S.G. § 1B1.13 cmt. n.1(A)(i). Second, the standard is met if the defendant is:

> (I) suffering from a serious physical or medical condition,
>
> (II) suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13 cmt. n.1(A)(ii). The note recognizes the possibility that Bureau of Prisons could identify other grounds that amount to "extraordinary and compelling reasons." U.S.S.G. § 1B1.13 cmt. n.1(D).

### III. Bishara Has Failed to Present "Extraordinary and Compelling Reasons" Warranting a Sentence Reduction and the § 3553(a) Factors Weigh Against His Release

#### A. Bishara Has Not Identified an "Extraordinary and Compelling Reason" for a Sentence Reduction

Bishara has not demonstrated "extraordinary and compelling reasons" warranting release or reduction in sentence. As explained above, under the relevant provision of § 3582(c), a court can grant a sentence reduction only if it determines that "extraordinary and compelling reasons" justify the reduction. 18 U.S.C. § 3582(c)(1)(A)(i).

The potential for exposure to COVID-19 in the prison setting does not itself constitute "extraordinary and compelling" reasons warranting compassionate release. As the Third Circuit has held, "the mere existence of COVID-19 in society

and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F. 3d 594, 597 (3d Cir. 2020). The risk of exposure to the virus, including new variants, "exists anywhere in society." *See United States v. De La Rosa*, Crim. No. 20-194, 2022 WL 2803115, *4 (W.D. Pa. July 18, 2022) (denying motion as to inmate with COVID-19 risk factors).

According to the Centers for Disease Control and Prevention ("CDC") website, "moderate to severe" asthma and type 2 diabetes can increase a person's risk of severe illness from COVID-19 infection.[1] However, these conditions do not establish "extraordinary and compelling" reasons for reduction in sentence where such conditions are well controlled and the inmate's risk of severe illness is mitigated by the inmate's vaccination status. *See United States v. Alston*, Crim. No. 03-844, 2023 WL 2238297, *4 (D.N.J. Feb. 27, 2023) (denying motion for compassionate release as to inmate with asthma); *United States v. Willard*, Crim. No. 05-605, 2023 WL 1100991, *3 (D.N.J. Jan. 30, 2023) (denying motion for compassionate release as to inmate with diabetes); *United States v. Reed*, Crim. No. 13-787, 2020 WL 631921, at *3 (D.N.J. Feb. 18, 2021) (collecting DNJ cases denying compassionate release for inmates with asthma).

In this case, Bishara's medical records confirm a diagnosis of asthma – although it is unclear whether his condition is "moderate to severe" – and a prescription for an inhaler, but the records also indicate that Bishara's asthma condition is well controlled. (*See* Ex. C.) Likewise, Bishara's diabetes appears well controlled in the prison environment. (*Id.*) Bishara's risk of severe illness is also mitigated by his vaccination status; he is fully vaccinated and received a booster in January 2022. *See Willard*, 2023 WL 1100991 at *3 ("Courts faced with precisely this issue have time and time again held that vaccinated status mitigates the dangers posed to prisoners with pre-existing health conditions and have denied compassionate release to inmates at far greater risk than [the defendant]."); *United States v. Roche*, Crim No. 96-114, 2022 WL 11701278, *3 (D.N.J. Oct. 20, 2022) ("[W]here defendants . . . are vaccinated, courts have consistently found that the risk from COVID-19 to diabetics has been mitigated such that extraordinary and compelling reasons do not exist to warrant early release." (collecting cases).)[2]

---

[1] See "People with Certain Medical Conditions," updated Feb. 10, 2023, available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#:~:text=Like%20adults%2C%20children%20with%20obesity,very%20sick%20from%20COVID%2D19 (last visited Feb. 28, 2023).

[2] According to the PSR, Bishara described his health as "fair" when interviewed by Probation in 2019, did not indicate a diagnosis of asthma, and stated that he was concerned that he was possibly diabetic but had not confirmed the diagnosis with a doctor. (PSR ¶ 95.)

COVID-19 appears to be well controlled at FCI Danbury. There are zero active cases of COVID-19 at the facility right now. Accordingly, Bishara "has failed to show that he faces an actual, non-speculative risk of exposure to COVID-19" at FCI Danbury. *United States v. Hernandez*, Crim. No. 06-736, 2022 WL 17820248, *3 (D.N.J. Dec. 19, 2022). FCI Danbury is also reporting high levels of vaccination among inmates and staff.[3] As courts have recognized, "[t]he vaccination of inmates and staff greatly reduces the risk of COVID-19 exposure and infection within the facility." *Id.*

Bishara's arguments regarding the conditions of confinement at FCI Danbury are unavailing. As courts have held, "general concerns over the pandemic and its direct and indirect consequences do not warrant an extraordinary and compelling reason for release." *United States v. Brunson*, Crim. No. 10-379, 2022 WL 3756198, *5 (E.D. Pa. Aug. 30, 2022). "The harshness of prison conditions caused by pandemic restrictions cannot constitute an extraordinary and compelling reason for release, as they [a]ffect every federal prisoner." *United States v. Leiva Castellanos*, Crim No. 15-17, 2021 WL 5768113, *2 (W.D. Va. Dec. 6, 2021); *United States v. Johnson*, 2021 WL 4120536, *3 (S.D.N.Y. Sept. 9, 2021) ("[A]lthough the pandemic has made prison conditions harsher than usual, those are circumstances that all inmates have had to endure. While the Court does not minimize those difficulties, they do not rise to the level of extraordinary and compelling.").

Bishara began serving his sentence in or around August 2021, after vaccinations were widely available and long after the initial uncertainty and challenges associated with the first year of the pandemic. According to the BOP, Bishara arrived at FCI Danbury on or about March 29, 2022. The expert report submitted by Bishara as an attachment to his motion is from June 2020, long prior to Bishara's arrival at FCI Danbury and before COVID-19 vaccines were approved for use. It has no relevance to the current state of the pandemic, the current conditions at FCI Danbury, or the conditions at FCI Danbury as experienced by Bishara from March 2022 to present. FCI Danbury is currently operating at "Level 1 Operations" with programs in normal operation at normal capacity.[4]

Finally, Bishara's efforts at rehabilitation and his re-entry plans, while laudable, do not constitute extraordinary or compelling reasons for a reduction in

---

[3] According to the BOP's COVID-19 statistics, FCI Danbury has vaccinated 983 inmates and 202 staff. *See* https://www.bop.gov/coronavirus/covid19_statistics.html (last visited Feb. 28, 2023). FCI Danbury is currently reporting a total of 957 inmates at the facility. *See* https://www.bop.gov/locations/institutions/dan/ (last visited Feb. 28, 2023).

[4] *See* https://www.bop.gov/coronavirus/covid19_modified_operations_guide.jsp (indicating FCI Danbury at "Level 1 Operations"); https://www.bop.gov/coronavirus/covid19_modified_operations_guide.jsp (describing "Level 1 Operations") (both sites last visited Feb. 28, 2023).

sentence. As Bishara himself acknowledges, pursuant to 28 U.S.C. § 994(t) and as also provided for in the Guidelines, § 1B1.13 cmt. n. 3, "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."

### B. **The 3553(a) Factors Strongly Weigh Against Bishara's Release**

As the Third Circuit has held, a district court must consider the § 3553(a) factors before granting compassionate release. *Pawlowski*, 967 F.3d at 329. Even if Bishara presented extraordinary and compelling circumstances—which he has not—the § 3553(a) factors weigh against his early release. *See, e.g., United States v. Cole*, 859 F. App'x 634, 635 (3d Cir. 2021) (affirming denial of compassionate release based on § 3553(a) factors, despite defendant's arguably compelling family circumstances); *Pawlowski*, 967 F.3d at 329-30 (affirming denial of compassionate release where it was undisputed that defendant presented "extraordinary and compelling reasons," but the district court acted within its discretion to deny compassionate release based on the § 3553(a) factors); *United States v. Doe*, 833 F. App'x 366, 368 (3d Cir. 2020) (affirming denial of compassionate release where district court found that defendant remained a danger to the community and the § 3553(a) factors weighed against release).

The § 3553(a) factors include "the nature and circumstances of the offense and the history and characteristics of the defendant," and "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense . . . to afford adequate deterrence to criminal conduct . . . to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a).

In this case, the § 3553(a) factors weigh against a reduction in sentence. Bishara's crime was serious, and he victimized vulnerable members of the community, forcing victims to pay thousands of dollars in excessive moving costs before they would release people's personal household items to them. Probation identified approximately 74 victims of the fraudulent scheme, and certain of those victims reported, in addition to financial loss, having their personal household possessions damaged, destroyed, or lost. (See PSR ¶¶ 51-61.) In light of this conduct, Probation recommended application of the "vulnerable victim" sentencing enhancement. (PSR ¶ 74.)

Bishara's history and characteristics also weigh against compassionate release. After sentencing, he fled the country. Only after the Government sought to enforce forfeiture of his bond – which would have had significant impact on a third party who had agreed to serve as surety for Bishara – did Bishara return to the United States to serve his sentence. To promote respect for the law and provide just punishment for the offense, Bishara should be required to serve his full sentence.

Bishara has at least approximately 29 months of his sentence left to serve (assuming good time credit). That means to date he has served only approximately 50% of his total sentence. Because he still has a substantial amount of his sentence remaining, that weighs strongly against early release. *See, e.g.*, *Pawlowski*, 967 F.3d at 330-31; *United States v. Fraction*, 855 F. App'x 72, 73-74 (3d Cir. 2021).

In summary, Bishara's health conditions and conditions of confinement cannot justify compassionate release where "the applicable § 3553(a) factors do not support relief" and the original sentence "was deemed necessary to protect the public, promote respect for the law, and serve the purposes of deterrence and adequate rehabilitation." *See United States v. Dupree*, 852 F. App'x 656, 658 (3d Cir. 2021) (affirming denial of compassionate release).

### IV.   Conclusion

In conclusion, the Government respectfully submits that Bishara cannot establish a basis for reduction in sentence, and the Court should deny his motion.

Respectfully submitted,

PHILIP R. SELLINGER
United States Attorney

*Katherine M. Romano*

By:   KATHERINE M. ROMANO
Assistant U.S. Attorney

cc: Richard Bishara, *pro se* (via U.S. mail)