**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHAMBERS OF<br>**SUSAN D. WIGENTON**<br>UNITED STATES DISTRICT JUDGE | MARTIN LUTHER KING COURTHOUSE<br>50 WALNUT ST.<br>NEWARK, NJ 07101<br>973-645-5903 |

July 12, 2023

Richard Bishara
Reg. No. 72100-050
FCI Danbury
Federal Correctional Institution
Route 37
Danbury, CT 06811
*Pro se Defendant*

Katherine Romano
Office of the U.S. Attorney
970 Broad Street
Newark, NJ 07102
*Counsel for Plaintiff*

**LETTER OPINION FILED WITH THE CLERK OF THE COURT**

    **RE:**    *United States v. Richard Bishara*
              **Criminal Action No. 19-496 (SDW)**

Litigants:

    Before this Court is *pro se* Defendant Richard Bishara's ("Defendant") Motion for Compassionate Release ("Motion") under the First Step Act ("FSA"), 18 U.S.C. § 3582(c)(1)(A). (D.E. 50.) This Court having considered the parties' submissions, and for the reasons stated below, denies Defendant's Motion.

**DISCUSSION**

A.

    Although a district court generally has limited authority to modify a federally imposed sentence once it commences, *see Dillon v. United States*, 560 U.S. 817, 825 (2010); *United States v. Epstein*, Crim. No. 14-287, 2020 WL 1808616, at *2 (D.N.J. Apr. 9, 2020), the First Step Act ("FSA"), 18 U.S.C. § 3582(c)(1)(A)(i), permits district courts to grant compassionate release where there exist "extraordinary and compelling reasons" to reduce a sentence. The statute provides, in relevant part, that:

> (A) [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
>> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1).  Accordingly, under the FSA, "a defendant seeking a reduction in his term of imprisonment bears the burden of establishing both that he has satisfied (1) the procedural prerequisites for judicial review, and (2) that compelling and extraordinary reasons exist to justify compassionate release." *Epstein*, 2020 WL 1808616, at *2.

The prerequisites for judicial review are straightforward.  First, a defendant seeking a reduced sentence must ask the Bureau of Prisons ("BOP") to file a motion for a reduced sentence on his behalf.  18 U.S.C. § 3582(c)(1)(A).  Then, the defendant must either "(i) wait thirty days for the BOP to respond or (ii) exhaust all available administrative appeals after receiving an adverse decision [from the BOP]."  *United States v. McDonald*, Crim. No. 09-656, 2020 WL 3638280, at *3 (D.N.J. July 2, 2020) (citing *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020)).

Once a defendant has satisfied those prerequisites, a court may reduce his or her sentence "if the court finds that (1) extraordinary and compelling reasons warrant a reduction, (2) the reduction would be consistent with applicable policy statements issued by the Sentencing Commission,[1] and (3) the applicable sentencing factors under § 3553(a) warrant a reduction." *United States v. Sparrow*, Crim. No. 18-653, 2020 WL 4364328, at *2 (D.N.J. July 30, 2020) (quoting *United States v. Pabon*, Crim. No. 17-165-1, 2020 WL 2112265, at *2 (E.D. Pa. May 4, 2020)).

B.

---

[1] While the Sentencing Commission's policy statement is not binding on this Court, "it still sheds light on the meaning of extraordinary and compelling reasons." *United States v. Andrews*, 12 F.4th 255, 260 (3d Cir. 2021).  The Sentencing Commission's relevant policy statement identifies medical conditions which meet the "extraordinary and compelling" requirement as those where the defendant is (i) suffering from a terminal illness, or (ii) suffering from a serious physical or medical condition, a serious functional or cognitive impairment, or experiencing deteriorating physical or mental health due to aging, that substantially diminishes the ability of the defendant to provide self-care within a correctional facility and from which they are not expected to recover.  U.S.S.G. § 1B1.13, cmt. n.1(A).

On or around June 6, 2019, the parties entered into a plea agreement pursuant to Federal Rule of Criminal Procedure ("Rule") 11(c)(1)(C).[2] Therein, Defendant agreed to plead guilty to a one-count Information charging conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349, and the parties agreed to a sentencing range of 14 to 27 months' imprisonment and three years' supervised release. (D.E. 16, 18.) Because the July 2019 plea agreement did not adequately reflect the seriousness of the offense, this Court rejected it. (D.E. 43 at 27.) On November 8, 2019, Defendant pleaded guilty to the Information pursuant to a plea agreement that set forth several non-binding stipulations. (D.E. 23, 25.) The Court accepted the November 2019 plea, (D.E. 23, 25), and, on January 9, 2020, sentenced Defendant to 60 months' imprisonment and three years' supervised release. (D.E. 26.) Shortly thereafter, Defendant fled to Israel and did not return to the United States until August 25, 2021. (D.E. 42 ¶¶ 9–10, 15–16; D.E. 47 at 5.) Upon Defendant's return, Magistrate Judge Espinosa revoked Defendant's bail and placed him in the custody of the U.S. Marshal. (D.E. 40.) Defendant is now incarcerated at Federal Correctional Institution, Danbury in Danbury, Connecticut ("FCI Danbury"). (D.E. 50.)

On September 15, 2022, Defendant filed a request for compassionate release with the warden of FCI Danbury. (D.E. 52-1 at 2.) In his request to the warden, Defendant highlighted several reasons that purportedly justified his release: Defendant's susceptibility to COVID-19 at FCI Danbury; his COVID-19 co-morbidity factors, including diabetes and asthma; his post-release employment opportunities as a truck driver and a dealership employee; and the non-violent nature of the crime for which he is incarcerated. (*Id.*) The BOP denied Defendant's request. (DE 52-2 at 2.) On December 19, 2022, Defendant filed the instant Motion with this Court. (D.E. 50.) The Government filed an opposition to Defendant's Motion on March 3, 2023, (D.E. 52), and Defendant filed a reply on March 27, 2023, (D.E. 53).

C.

Defendant raises several arguments in support of the instant Motion: (1) his medical conditions as they relate to COVID-19, (2) the conditions at FCI Danbury, and (3) his rehabilitation. (D.E. 50 at 1–2, 4–9.) This Court addresses each argument in turn and finds them unpersuasive.

**Medical Conditions and the COVID-19 Pandemic**

Generally, "defendants who successfully move for compassionate release related to COVID-19 through Section 3582(c)(1)(A) demonstrate that: (1) they are particularly vulnerable to developing severe illness from COVID-19 due to age or a medical condition(s); and (2) there is 'an actual, non-speculative risk of exposure to COVID-19 in the facility where [they are] held.'" *United States v. Cutler*, Crim. No. 93-536-2, 2022 WL 16695109, at *2 (D.N.J. Nov. 3, 2022)

---

[2] Rule 11(c)(1)(C) provides that "in return for a guilty plea, a government attorney may . . . 'agree that a specific sentence or sentencing range is the appropriate disposition of the case, or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply.'" *United States v. Bernard*, 373 F.3d 339, 343 (3d Cir. 2004) (quoting Fed. R. Crim. P. 11(c)(1)(C)). Recommendations or requests contained in Rule 11(c)(1)(C) pleas "bind[] the court once the court accepts the plea agreement." *Id.* (citing Fed. R. Crim. P. 11(c)(1)(C)).

3

(quoting *United States v. Somerville*, 463 F. Supp. 3d 585, 597–98 (W.D. Pa. 2020)). Here, Defendant has not shown either.

First, while this Court is sympathetic to Defendant's medical conditions—asthma and diabetes—he has failed to show that he is particularly vulnerable to developing severe illness due to COVID-19. Although asthma and diabetes may increase Defendant's risk of severe illness should he contract COVID-19,[3] he is fully vaccinated against the virus and received a booster in January 2022. (*See* D.E. 52-3 ("Ex. C").)[4] Several decisions in this District support that vaccination against COVID-19 significantly diminishes the risks of severe illness associated with the virus. *United States v. Allen*, Crim. No. 18-216, 2023 WL 314351, at *6 (D.N.J. Jan. 19, 2023) (denying compassionate release to a defendant by reasoning that his vaccination greatly reduced the likelihood of serious consequences from a COVID-19 infection); *United States v. Hernandez*, Crim. No. 06-736-5, 2022 WL 17820248, at *3 (D.N.J. Dec. 19, 2022) ("[Defendant] is fully vaccinated against COVID-19 . . . . He is therefore substantially protected from COVID-19 infection and, in the case of another breakthrough infection, from severe symptoms." (citing *United States v. Williams*, Crim. No. 11-421, 2022 WL 950994, at *2 (D.N.J. Mar. 29, 2022)); *United States v. Roche*, Crim. No. 96-114, 2022 WL 11701278, at *3-4 (D.N.J. October 20, 2022) ("Since COVID-19 vaccines have become available, . . . courts have consistently found that the risk from COVID-19 to diabetics has been mitigated such that extraordinary and compelling reasons do not exist to warrant early release." (collecting cases)); *United States v. Doan*, Crim. No. 09-361-1, 2021 WL 3537152, at *3 (E.D. Pa. Aug. 11, 2021), *aff'd*, No. 21-259, 2022 WL 1551830 (3d Cir. May 17, 2022) (holding that the risks of severe illness or death from COVID-19 were minimal for a fully vaccinated, 52-year-old defendant suffering from anemia, hyperlipidemia, pre-diabetes, hypertension, and acute bronchitis).

Second, Defendant's medical records indicate that the BOP has provided him with consistent access to treatment. (*See generally* Ex. C.) Defendant has not offered any evidence to the contrary—indeed, he has not contested the warden's assertion that Defendant's "medical needs are being well treated" at FCI Danbury. (D.E. 50 at 8.) Accordingly, Defendant has not carried his burden of establishing that his medical conditions, or the treatment thereof at FCI Danbury, constitute extraordinary and compelling reasons for his release. *United States v. McNair*, 481 F. Supp. 3d 362, 365 (D.N.J. 2020) ("[A] defendant seeking a reduction in his sentence under the First Step Act 'bears the burden, of [establishing] . . . that compelling and extraordinary reasons exist to justify compassionate release.'" (quoting *United States v. Sellers*, Crim. No. 10-434, 2020 WL 1972862, at *1 (D.N.J. Apr. 24, 2020))); *see also United States v. Williams,* Crim. No. 17-341, 2021 WL 2374390, at *5 (D.N.J. June 10, 2021) (denying motion for compassionate release because the defendant's medical conditions were "well-controlled").

---

[3] The Centers for Disease Control and Prevention ("CDC") recognizes that certain health conditions, including obesity, diabetes, moderate or severe asthma, and mental health conditions may put individuals at an increased risk of severe illness from COVID-19. *See* CDC, *People with Certain Medical Conditions* (last updated May 11, 2023), *https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html*.

[4] Along with its opposition brief, the Government submitted to this Court a hard copy of Defendant's medical records, which have been filed under seal as Exhibit C. Because Exhibit C does not contain consistent pagination, this Court will cite generally to Exhibit C when referencing Defendant's medical history.

Third, Defendant has failed to show that he is at an elevated risk of contracting COVID-19 at FCI Danbury. As of July 2023, FCI Danbury had no active COVID-19 cases. Federal Bureau of Prisons, *www.bop.gov/coronavirus/covid19_statistics.html* (last visited July 2023). Moreover, Defendant's reference to a June 2020 inspection report on FCI Danbury's COVID-19 policies is wholly irrelevant—it was published before vaccines for COVID-19 became widely available, and it predates Defendant's arrival at FCI Danbury by well over a year. (D.E. 50-1 at 37.) Even if this Court were to consider the June 2020 report, it merely illustrates general, facility-wide issues with FCI Danbury's COVID-19 policies; it does not, however, indicate any specific risk of harm to Defendant. (*See generally* D.E. 50-1.) Put simply, Defendant has failed to show "an actual, non-speculative risk of exposure to COVID-19" at FCI Danbury. *Cutler*, 2022 WL 16695109, at *2 (quoting *Somerville*, 463 F. Supp. 3d at 597–98); *see also Raia*, 954 F.3d at 597 ("the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release").

For the foregoing reasons, Defendant has failed to show that extraordinary and compelling reasons exist to justify his release.[5]

### 18 U.S.C. § 3553(a) Sentencing Factors

Even if Defendant had demonstrated that extraordinary and compelling reasons exist to justify his release, the applicable sentencing factors under 18 U.S.C. § 3553(a) weigh against granting his Motion. *See United States v. Horvath*, Crim. No. 15-400, 2020 WL 7074379, at *1, *3–4 (D.N.J. Dec. 3, 2020) (concluding that, while defendant's hypertension and other health issues constituted an "extraordinary and compelling" reason for release, the sentencing factors weighed against compassionate release). Here, Defendant is serving a 60-month term of imprisonment for conspiracy to commit wire fraud against approximately 74 victims. (D.E. 26.) Reducing Defendant's sentence by over two years would not "reflect the seriousness of the offense," "promote respect for the law,"[6] "provide appropriate punishment for the offense," or promote both specific and general deterrence. 18 U.S.C. § 3553(a)(2); *see also United States v. Neff*, 523 F. Supp. 3d 726, 729 (E.D. Pa. 2021) ("[I]n cases involving white collar crimes, such as this one, a sophisticated individual's understanding of the likelihood of apprehension and length of punishment is an important component of a putative offender's calculus on whether to commit the crimes."). The reasons set forth on the record at the time of Defendant's sentencing are still applicable, and Defendant has not shown any bases to deviate therefrom. This Court will therefore deny the Defendant's Motion.

---

[5] Defendant also contends that his rehabilitation while incarcerated constitutes an extraordinary and compelling reason for his release. (*See generally* D.E. 50.) Defendant's rehabilitative efforts, standing alone, are insufficient to justify compassionate release. 28 U.S.C. § 994(t); *see also United States v. Barndt*, No. 22-2548, 2022 WL 17261784, at *2 (3d Cir. Nov. 29, 2022) ("The statute is clear that . . . rehabilitation alone cannot constitute extraordinary and compelling grounds under § 3582." (citing *id.*)); *United States v. Andrews*, 480 F. Supp. 3d 669, 687–88 (E.D. Pa. 2020), *aff'd*, 12 F.4th 255 (finding that the defendant's extensive rehabilitative efforts—his regular attendance at church; his years-long, unblemished disciplinary record; and his developing a charitable program—were "uncommon, and thus extraordinary," but denying compassionate release because rehabilitation by itself does not justify compassionate release).

[6] This factor is particularly relevant here in light of Defendant's decision to flee the country after this Court imposed the sentence.

**CONCLUSION**

       For the foregoing reasons, Defendant's Motion is **DENIED**. An appropriate order follows.

                                                ___/s/ Susan D. Wigenton_____
                                                **SUSAN D. WIGENTON, U.S.D.J.**